**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Stephen J. TREADWAY and Kenneth W. Corba, Defendants.**

**No. 04 Civ. 3464(VM).**

United States District Court,
S.D. New York.

June 9, 2006.

Dorothy Heyll, Jose F. Sanchez Securities And Exchange Commission Northeast Regional Office, New York, NY, Richard G Primoff, Nicolas Morgan, U.S. Securities & Exchange Commission, New York, NY, Sam S. Puathasnanon, Securities And Exchange Commission, Los Angeles, CA, Rachel Lois Izower, Securities Exchange Commission (Broadway), New York, NY, for Securities and Exchange Com'n.

Maxine·Gail Sleeper, Alan Levine, Kronish Lieb Weiner & Hellman L.L.P., New York, NY, for Stephen J. Treadway.

Abigail Kaufman Hemani, Adam B. Ziegler, Goodwin Procter LLP(Boston), Boston, MA, David B. Pitofsky, Richard Mark Strassberg, Goodwin Procter, LLP(NYC), New York, NY, for Kenneth W. Corba.

## DECISION AND ORDER

MARRERO, District Judge.

In anticipation of the trial of this matter, Plaintiff the Securities and Exchange Commission (the "SEC"), Defendant Ste-

ven J. Treadway ("Treadway"), and Defendant Kenneth W. Corba ("Corba") have filed several motions in limine to exclude various pieces of evidence. The Court reviewed the parties' submissions in support of and in opposition to these various motions. At the pre-trial conference on June 9, 2006, the Court issued rulings on several of the motions and indicated that a written order further setting forth the Court's rationale would be forthcoming. Accordingly, the following discussion sets forth the Court's decisions on these motions.

## I. SEC MOTIONS IN LIMINE

A. *MOTION IN LIMINE NO. 1: TO EXCLUDE THE TESTIMONY OF THE ATTORNEYS FOR GOLDBERG AND GRADY AND RELATED DOCUMENTS*

The SEC has moved to preclude Defendants from offering the testimony of attorneys for two of the SEC's witnesses, Michael Grady ("Grady") and Ryan Goldberg ("Goldberg"), as well as to preclude Defendants from offering correspondence and other documents prepared by these attorneys.

Since the parties have indicated that the SEC and Corba may have reached a settlement, the Court addresses only those aspects of the motion that relate to Treadway. By letter dated June 2, 2006, Treadway indicated that he did not intend to call Grady's and Goldberg's lawyers, but only sought to introduce certain documents— specifically, four letters to the SEC and the New York State Attorney General that the attorneys authored on behalf of Goldberg and Grady. These letters concern investigations involving both PIMCO and other entities; the letters provide information in response to subpoenas, discuss efforts by Goldberg and Grady to cooperate in these investigations, and ask for leniency in light of this cooperation.

At least one of the letters implicates Grady and Goldberg in late trading, in addition to market timing. Treadway argues that this evidence is highly relevant to demonstrating the bias of Goldberg and Grady, in that the letters show that Goldberg and Grady were facing serious criminal charges and thus had a strong motive to lie, in exchange for leniency.

 That Goldberg and Grady were cooperating in the face of serious charges by the SEC and the New York State Attorney General is relevant to whether they may have a bias toward the plaintiff in this case. However, this Court has discretion to tailor and limit the details of bias impeachment material, "when the main circumstances from which bias proceeds have been proven." *United States v. Weiss,* 930 F.2d 185, 197 (2d Cir.1991) (quoting *McCormick on Evidence* § 40). Accordingly, Treadway may vigorously cross-examine Goldberg and Grady about their bias, and whether they sought to cooperate in this and other investigations in exchange for more lenient treatment by the New York State Attorney General and the SEC. However, the introduction of these letters, and the potential testimony of attorneys necessary to authenticate them, creates an unnecessary sideshow that would cause undue delay and would be cumulative if Goldberg and Grady admit the facts demonstrating bias. *See Weiss,* 930 F.2d at 198 (upholding exclusion of additional evidence of bias when "[t]he evidence would have had minimal probative value because it was cumulative, and its admission would have required unnecessary delay").

 Treadway has also indicated that he wants to use these letters to demonstrate Goldberg's and Grady's concern that regulators believed they were lying. For example, in one of the letters, dated May

27, 2004, the attorney states to the New York State Attorney General's Office, "you ... indicated that you were not convinced that Messrs. Grady and Goldberg were being truthful." These statements regarding whether Grady and Goldberg were being truthful do not address bias, but rather, character for truthfulness, and are thus inadmissible extrinsic evidence under Federal Rule of Evidence 608(b). Accordingly, the Court grants the SEC's motion to exclude these letters and the testimony of their authors.

B. *MOTION IN LIMINE NO. 2: TO EXCLUDE EXPERT AND OTHER EVIDENCE REGARDING LACK OF SPECIFIC EFFORTS IN REGULATING MARKET TIMING*

■ The SEC has moved to exclude any evidence that the SEC "tacitly approved" market timing prior to 2003 and did not specifically monitor or regulate market timing before 2003.

Part of this motion is directed against the testimony of Corba's proffered expert witness. Since the parties have indicated that the SEC and Corba may have reached a settlement, the Court does not decide the aspects of this motion that relate to the testimony of Corba's expert, but addresses only those aspects of the motion that relate to Treadway.

Treadway has indicated that he seeks to testify as to his own understanding of the regulatory environment prior to 2003. Specifically, he believed that market timing was legal and unregulated. The Court that finds that this testimony is relevant and appropriate, and thus denies this motion.

The Court acknowledges the assertion of the SEC that the issue in the case is not whether market timing was a *per se* violation of the securities laws but rather, whether the defendants' failure to disclose

market timing activity violated the anti-fraud provisions of the securities laws, and whether by allowing the trading, defendants violated their fiduciary duties. The Court further acknowledges the SEC's observation that regardless of whether market timing *per se* is legal and was so prior to 2003, the anti-fraud and fiduciary duty provisions of the securities laws were in existence prior to 2003. However, Treadway's state of mind and his own understanding of the underlying regulatory climate is relevant to his decisionmaking process during the events at issue and thus to issues of scienter and fiduciary duty. For example, Treadway's alleged understanding that market timing was unregulated could tend to demonstrate the reasonableness of his alleged belief that market timing did not pose a substantial risk to the funds and to shareholders.

The probative value of this evidence is not outweighed by the risk of unfair prejudice and confusion. A juror can grasp—with appropriate instructions, if necessary—that market timing is legal but that the failure to disclose it, in contravention of statements made in a prospectus, may constitute violations of the securities laws.

However, the Court cautions the parties that Treadway may testify only as to his own state of mind, and cannot affirmatively opine that the SEC "tacitly approved" market timing. If needed, the parties may confer and propose an appropriate limiting instruction to the Court consistent with this determination.

C. *MOTION IN LIMINE NO. 3: TO EXCLUDE COMPELLED TESTIMONY OF SEC ATTORNEYS AND ADMISSION OF THEIR ATTORNEY NOTES REGARDING GRADY AND GOLDBERG*

The SEC has also moved to bar the defendants from introducing notes taken

by SEC attorneys during proffer sessions with Grady and Goldberg.

According to the defendants, this evidence is relevant and admissible to demonstrate bias, to show how the repeated proffer sessions influenced their testimony, as evidence of prior inconsistent statements, and potentially admissible for their truth.

As already explained in relation to the SEC's first motion in limine, if such notes are being used to demonstrate bias, such extrinsic evidence is unnecessary, cumulative, and would cause undue delay, particularly given that Grady and Goldberg will be subject to cross-examination and may be questioned as to these and other circumstances potentially showing bias.

█ To the extent that defendants seek to introduce these materials as evidence of prior inconsistent statements, the notes of a third party regarding what a witness said are not admissible as prior statements of that witness in the absence of the witness's endorsement of those notes as his own statement. *See United States v. Almonte*, 956 F.2d 27, 29–30 (2d cir.1992). "The burden of proving that notes reflect the witness's own words rather than the note-taker's characterization falls on the party seeking to introduce the notes." *Almonte*, 956 F.2d at 29. Defendants have not demonstrated that these proffer notes reflect Grady's and Goldberg's own words. Moreover, even if they were to demonstrate that the proffer notes reflect Goldberg's and Grady's own statements, defendants must demonstrate under Federal Rule of Evidence 613(b) that the statements are actually inconsistent and relevant. As no specific statements have yet been offered in the record, the Court will not at this time determine their admissibility on this ground.

Thus, although Defendants claim that the notes will demonstrate changes in Grady's and Goldberg's testimony, defendants cannot use them for this purpose without first demonstrating that the notes are indeed actual prior statements by these witnesses.

Finally, the Court will not at this time address whether these statements can be offered for their truth or are inadmissible hearsay, since it is not clear which, if any, specific statements allegedly reflected in the proffer notes would be admissible if offered.

## II. TREADWAY AND CORBA JOINT MOTION IN LIMINE

### A. MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF THE SEC'S PROFFERED EXPERT, SHERIDAN TITMAN

Treadway and Corba have jointly moved to exclude the testimony of the SEC's proffered expert, Dr. Sheridan Titman. As Corba may have reached a settlement with the SEC, and Treadway and the SEC have indicated that this motion may be resolved through stipulation, the Court reserves decision at this time.

## III. TREADWAY MOTIONS IN LIMINE

### A. MOTION IN LIMINE NO. 1: To Preclude the SEC from Introducing Evidence of Late Trading by Non–Party Canary Capital Partners LLC

Treadway has moved to bar the SEC from introducing evidence of late trading by Canary Capital Partners LLC in the PIMCO Funds. Because the parties have indicated that this motion may be resolved through stipulation, the Court reserves decision at this time.

### B. MOTION IN LIMINE NO. 2: TO PRECLUDE THE SEC FROM OFFERING LAY OPINION TESTIMONY OF WALLACE STOOKS

█ Treadway has moved to preclude Wallace Stooks ("Stooks"), who serves on

the PIMCO Board of Trustees and was the chair of the Audit Committee, from giving certain lay opinions: specifically, that the Canary arrangement violated or may have violated the prospectus, and that Treadway should have disclosed the Canary arrangement to the Board prior to 2003. The Court denies this motion. The SEC has indicated that Stooks will testify that as a member of the Board, he was responsible for overseeing the PIMCO Funds, and in carrying out his duties as a Trustee, he became familiar with PIMCO's policies and prospectus, and met with Treadway and others regularly to discuss various matters, including market timing. Stooks therefore has sufficient personal knowledge to testify as to what information he, as a Board member, would have wanted to know or could reasonably expect to receive under PIMCO's business practices, including whether Canary's trading was the type of activity that he as a Board member should have been provided. Through his position as a Board member Stooks gained personal knowledge as to PIMCO's policies and can testify as to whether certain types of activity were consistent with those policies as understood by him in his fiduciary capacity. The Court is not persuaded that these opinions usurp the role of the jury, as Stooks would not be testifying that the defendants acted fraudulently, that the Canary trading made the prospectus misleading, or that the defendants breached their fiduciary duties. The motion is therefore denied.

C. *MOTION IN LIMINE NO. 3: TO PRECLUDE THE SEC FROM INTRODUCING IRRELEVANT AND COLLATERAL EVIDENCE REGARDING EVENTS AND ACTIONS IN OR AFTER SEPTEMBER 2003*

Treadway has moved to preclude the SEC from introducing any evidence of activities that took place in September 2003 or later. The parties have indicated that this motion may be resolved by stipulation. Accordingly, the Court reserves judgment at this time.

D. *MOTION IN LIMINE NO. 4: TO PRECLUDE THE SEC FROM ASSERTING THAT CANARY'S TRADING TOTALED $4.4 BILLION*

■ Treadway moves to preclude the SEC from asserting to the jury that Canary's trading totaled $4.4 billion on the grounds that this figure is inaccurate and thus not relevant, and is highly misleading and prejudicial. The Court denies this motion.

According to Treadway, the $4.4 billion is inaccurate for three reasons. First, to reach this figure, the SEC counted the "purchase" and "sale" legs of each round trip separately. According to Treadway, this is misleading because the prospectus talks about "round trips," not individual transactions. However, as the SEC has pointed out, each purchase or sale is relevant to the magnitude of the trades and the potential for harm, because each time an investor purchases mutual fund shares, the portfolio manager has the ability to use that cash to purchase additional securities, and each time the investor redeems shares, the portfolio manager must determine whether to liquidate securities in order to pay the investor's redemption request. The multiple individual purchases and sales are thus relevant to the burdens placed on the portfolio managers to manage the inflows and outflows of cash.

The second reason Treadway argues that this figure is inaccurate is because the SEC counted as separate transactions the subsequent, repetitive purchases and sales of the same amount, whereas the alleged market timing arrangement limited the trading to a "total" market timing capacity of $100 million in the aggregate and a

maximum of three percent of any single fund. However, as stated, the number and frequency of the multiple transactions are relevant to the ability of portfolio managers to manage the inflows and outflows of cash and the potential harm to shareholders and the Funds each time the round trips are conducted.

Third, Treadway argues that the figure is misleading because it adds up Canary's trading in three separate PIMCO funds, whereas under the Prospectus harm is determined on a per-fund basis. However, the parties have stipulated to the total number and amount of transactions, and the Court sees no reason why the SEC cannot add the dollar figures of these transactions to offer a total figure. Treadway had fiduciary duties to all the funds, and to the investors in those funds, as he served as Chair of the Board for the entire PIMCO Funds. The Court also notes that elsewhere, Treadway has argued that Canary's trades in all three funds should be aggregated when considering harm—specifically, the report of Treadway's expert, David Gross, looks at Canary's trading across funds to show PIMCO shareholders as a whole did not experience harm.

There is thus an adequate basis for this figure and it is relevant both to potential for harm and to other issues in the case, such as scienter and fiduciary duty. It is not sufficiently prejudicial to warrant exclusion. On cross-examination and through his own witnesses during his direct case, Treadway is free to attack the SEC's figure as misleading and to present his own view of the total impact of the trading.

E. *MOTION IN LIMINE NO. 5: TO PRECLUDE THE SEC FROM OFFERING CERTAIN HEARSAY WITHIN HEARSAY TESTIMONY*

Treadway moves to bar, on hearsay grounds, Ryan Goldberg, Edward Stern, or any other witness from testifying as to what other people told them Treadway had said. The Court denies this motion as premature. There is no need at this time for this issue to be resolved through a preemptive motion in limine. If during the course of its case the SEC attempts to elicit testimony that is improper on hearsay grounds, Treadway can object at that time and the issue will be resolved at that time.

F. *MOTION IN LIMINE NO. 6: TO PRECLUDE THE SEC FROM INTRODUCING DEFENDANT CORBA'S OPINION THAT PIMCO MADE AN ACCOMMODATION OR EXCEPTION IN PERMITTING STERN TO INVEST IN CERTAIN PIMCO FUNDS*

Treadway has moved to exclude Corba's investigative testimony that PIMCO was "making an exception" or "accommodation" in allowing Canary's trading on the grounds that it is improper lay opinion, irrelevant, more prejudicial than probative, and hearsay. The Court denies this motion.

■ Corba's testimony on this point is not lay opinion, but factual testimony regarding the events at issue, based on his own personal knowledge and understanding of the market timing policy gained through his position, duties, and responsibilities as CEO of a PIMCO sub-adviser and portfolio manager of several of the PIMCO funds. Corba has testified that he was "always familiar with the spirit" of the market timing policy. As this Court already held in its summary judgment decision and order, Corba did not need to know the specific mechanics of how the policy was enforced to know what the policy was and that an exception was being made.

■ To the extent that these statements can even be construed as "opinion" rather than factual testimony, the testimony satisfies Federal Rule of Evidence 701 in that it is (1) "rationally based" on Corba's perception and (2) "helpful to a clear understanding" of a witness's testimony or a fact in issue. Fed.R.Evid. 701; *United States v. Garcia*, 413 F.3d 201, 213 (2d Cir.2005). First, for the reasons just indicated, Corba's testimony is rationally based on his personal knowledge and understanding of the market timing policy. Second, Corba's testimony is helpful to the jury's understanding of a fact in issue—the nature of PIMCO's market timing policy and whether the Canary trading was an exception to it. The testimony does not merely tell the jury what conclusion to reach—it does not, for example, state whether there was a material misrepresentation or omission in the PIMCO Funds' prospectus. Moreover, it is grounded his position at PIMCO, his knowledge of PIMCO's operations, and his personal involvement in the PIMCO Funds' decision to approve the trading.

The testimony is relevant to the SEC's claims against Treadway, in that it is probative of whether Treadway's understanding and conduct was reasonable. It is not significantly more prejudicial than probative so as to warrant exclusion under Federal Rule of Evidence 403. Although Treadway argues that it will mislead and confuse the jury to hear Corba testify "about a policy about which he ... knew so little," as already explained, Corba has sufficient personal knowledge of PIMCO's market timing policies to make his testimony on this subject probative.

Finally, it is premature to bar the testimony on hearsay grounds, as it is unclear at this juncture how the statements will be offered into evidence. If Corba does not settle, it is admissible against him as an admission of a party-opponent. If Corba does settle, but is called to testify, it may be admissible under Rule 801(d)(1), which relates to prior statements of a witness. If Corba does not testify, it may be admissible under another hearsay exception, such as Rule 803(3), if it is offered to demonstrate state of mind. Thus, the Court does not bar the evidence on hearsay grounds at this time.

## IV. *CORBA MOTIONS IN LIMINE*

As the parties have indicated that Corba and the SEC may have reached a settlement, the Court has not decided Corba's motions, with the exception of his Motion In Limine Number Three, which was joined by Treadway.

### A. *MOTION IN LIMINE NO. 3: TO PRECLUDE TESTIMONY BY LAY WITNESSES REGARDING POTENTIAL HARM FROM MARKET TIMING*

■ In this motion, Treadway and Corba seek to bar any of the SEC's fact witnesses, including Jeffrey Parker ("Parker") and John Schneider ("Schneider"), who are two of PIMCO's portfolio managers, from testifying to the risk of harm created by Canary's trading or to any potential risks associated with market timing.

Defendants argue that such testimony constitutes improper expert opinion. According to the defendants, the risk of harm created by market timing requires specialized knowledge and experience, and if Parker and Schneider testified that the trading created a risk of harm, such testimony would be based on specialized knowledge derived from their positions in the mutual fund industry. Since lay opinion testimony cannot be derived from specialized knowledge, but must be based on first-hand, personal knowledge, and Parker and Schneider have not been offered as expert

witnesses, such testimony must be barred. The Defendants point out that each party has retained an expert to analyze the risk of harm posed by Canary's trading.

However, the Court finds that both Parker and Schneider have sufficient personal knowledge from their positions as portfolio managers to testify as to any disruption or harm that they experienced or perceived in the funds that they managed. The SEC has indicated that Canary traded in Parker's fund and that Parker repeatedly complained to Corba about this trading. Parker can certainly testify as to any disruption or harm that he personally perceived from this trading. As to Schneider, the SEC has indicated that Schneider opposed any trading by Canary in the fund that he managed because of his concerns about disruption to the fund, that he expressed such opposition to Corba, and that as a result, he was exempted from the Canary arrangement. Schneider can testify as to the reasons he opposed Canary's trading. Both Schneider and Parker can testify as to their responsibilities as portfolio managers and any harms that they personally perceived as part of their experiences and duties as portfolio managers. This motion is therefore denied.

## V. *ORDER*

For the reasons discussed above and in accordance with the considerations there expressed, it is hereby

**ORDERED** that the Motion In Limine Number 1 (Docket No. 179) of the Securities and Exchange Commission ("SEC") to exclude the testimony of the attorneys for two of the SEC's witnesses, Michael Grady and Ryan Goldberg, and to preclude Defendants Steven J. Treadway ("Treadway") and Kenneth W. Corba ("Corba") (collectively, "Defendants") from offering documents prepared by those attorneys, is GRANTED; and it is further

**ORDERED** that the SEC's Motion In Limine Number 2 (Docket No. 180) to exclude evidence regarding lack of specific efforts in regulating market timing is DENIED; and it is further

**ORDERED** that the SEC's Motion In Limine Number 3 (Docket No. 181) to bar Defendants from introducing notes taken by SEC attorneys during proffer sessions with Michael Grady and Ryan Goldberg is GRANTED; and it is further

**ORDERED** that Treadway's Motion In Limine Number 2 (Docket No. 190) to preclude certain testimony of Wallace Stooks is DENIED; and it is further

**ORDERED** that Treadway's Motion In Limine Number 4 (Docket No. 196) to preclude the SEC from asserting that the trading of Canary Capital Partners in the PIMCO Funds totaled $4.4 billion is DENIED; and it is further

**ORDERED** that Treadway's Motion In Limine Number 5 (Docket No. 199) to preclude the SEC from offering certain hearsay within hearsay testimony is DENIED; and it is further

**ORDERED** that Treadway's Motion In Limine Number 6 (Docket No. 204) to preclude the SEC from introducing Corba's testimony that PIMCO was making an exception or accommodation in allowing Canary Capital Partners' trading is DENIED; and it is finally

**ORDERED** that Corba's Motion In Limine Number 3 (which is part of Docket No. 160), joined by Treadway, to preclude testimony of lay witnesses regarding potential harm from market timing is DENIED.

**SO ORDERED.**